IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

ALFONSO DAVENPORT                                                                PLAINTIFF

v.                             CASE NO. 5:10CV00023 BSM

BOARD OF TRUSTEES OF THE UNIVERSITY OF
ARKANSAS AT PINE BLUFF; and
DR. LAWRENCE A. DAVIS, JR., Individually, and
in his Official Capacity                                                          DEFENDANTS

## ORDER

Plaintiff Alfonso Davenport filed his original complaint on January 27, 2010. On April 28, 2010, defendants Board of Trustees of the University of Arkansas at Pine Bluff ("the University") and Chancellor Dr. Lawrence A. Davis, Jr. moved to dismiss a number of Davenport's claims as legally insufficient. [Doc. No. 4]. Davenport did not respond, but instead sought leave to amend his complaint to remedy the problems in his original complaint that were identified by defendants. Leave was granted, and Davenport filed his amended complaint on July 29, 2010. For the reasons set forth below, many of defendants' arguments in their motion to dismiss continue to apply to Davenport's amended complaint. Accordingly, defendants' motion is granted in part and denied in part.

I. ALLEGATIONS

Viewed in the light most favorable to Davenport, the nonmoving party, the facts are as follows. Davenport has worked in the University's department of public safety for over twenty-eight years. In July 2005, Davenport filed a lawsuit against the University and Dr. Davis seeking declaratory and injunctive relief and damages for denying Davenport

promotions and advancement, violations of the First and Fourteenth Amendments, and for violations of Davenport's civil rights under 42 U.S.C. §§ 1981, 1983. Although Davenport did not prevail in that action, the University's then-chief of public safety, Donnie Savage, resigned amid the allegations that Dr. Davis permitted Savage to use University property for personal use, awarded Savage a lucrative contract for providing private security services, and protected Savage from arrest and discipline following Savage's assault of another University employee.

Davenport asserts herein that there are other similar episodes confirming that Davis generally acted as a bully. For example, Davenport alleges that Dr. Davis equated himself to "God" on the University campus and stated that "he needs no authority to act" because "he can do anything he wishes to do as Chancellor." Davenport further states that Dr. Davis justified the termination of certain University employees by boasting that he "can terminate anyone he wants" particularly when an employee does not act or speak in accordance with "his thinking."

Davenport maintains that the publicity brought by the first lawsuit exacerbated his already-strained relationship with Dr. Davis and that he suffered adverse employment actions as a result. These retaliatory measures included disciplinary measures, decreases in pay, and denial of opportunities to apply for promotions or advancement within his department. Davenport points to his lack of advancement despite his many years of experience and qualifications as proof that Davis has retaliated against him.

Specifically, Davenport asserts that Eugene Butler was "secretly" promoted from his patrol officer position to the second-highest ranking offer in the department of public safety. Davenport appears to suggest that his own educational background, training, and experience were far greater than Butler's and the fact that he wasn't even interviewed for the position demonstrates the University's and Dr. Davis's animus. Indeed, Davenport alleges that Dr. Davis frequently disregarded University policy in the areas of hiring and compensation and generally created an "atmosphere of intimidation and harassment" and that Davenport's numerous grievances were ignored or summarily denied.

Davenport's amended complaint proceeds under several theories of liability, including: (1) civil rights violations under 42. U.S.C. section 1981 and 1983; (2) retaliation under Title VII and the Arkansas Civil Rights Act (ACRA); and (3) state-law claims of outrage and breach of contract.

## II. LEGAL STANDARD

"Dismissal is proper where the plaintiff's complaint fails to state a claim upon which relief can be granted." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (citing Fed. R. Civ. P. 12(b)(6)). Accepting as true all of the factual allegations contained in the complaint, the complaint must be reviewed to determine whether its allegations show that the pleader is entitled to relief. *Id.* Although the plaintiff "need not prove specific facts in support of his allegations," he must include "sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief

above a speculative level." *Id.* (internal citations omitted).

## III. DISCUSSION

Defendants' motion to dismiss is granted in part and denied in part. Davenport's section 1981 and 1983 claims against the University must be dismissed because it is an arm of the state of Arkansas, which is immune from suit pursuant to the Eleventh Amendment. Davenport's Title VII and ACRA retaliation claims must be dismissed because Davenport neither opposed a practice made an unlawful employment practice by those laws, nor did he participate in an investigation, proceeding, or hearing under those laws. Davenport's state-law claims of outrage and breach of contract must be dismissed for failure to state a claim. Therefore, Davenport's only legally cognizable claim is a section 1983 retaliation claim for declaratory and injunctive relief against Dr. Davis in his official capacity and for monetary damages against Dr. Davis in his individual capacity.

A.   <u>Sections 1981 and 1983</u>

The Eleventh Amendment grants states immunity from suit in federal courts. *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996). This immunity applies to suits brought under sections 1981 and 1983. *Quern v. Jordan*, 440 U.S. 332, 342 (1979); *Singletary v. Missouri Dep't of Corrs.*, 423 F.3d 886, 890 (8th Cir. 2005). An action for damages brought against a state official in his official capacity is similarly barred because it is essentially "a suit against the state itself." *Burk v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991). Therefore, at the outset, it is clear that Davenport's section 1981 and 1983 claims against the University

should be dismissed as should his section 1981 and 1983 claims for damages against Dr. Davis in his official capacity.

Davenport also seeks declaratory and injunctive relief against Dr. Davis in his official capacity. A claim for such prospective relief against a state official in his official capacity is specifically exempted from the Eleventh Amendment's protection. *Milliken v. Bradley*, 433 U.S. 267, 289 (1977). This exemption applies so long as, upon "a straightforward inquiry," it is found that the complaint "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). The prayer for relief in Davenport's complaint requests a declaration that Dr. Davis has and continues to infringe upon Davenport's and other University employees' First Amendment rights and seeks a permanent injunction preventing these policies and practices. Accordingly, he may proceed against Dr. Davis in his official capacity for this prospective relief.

Section 1981 protects a person's right to make and enforce contracts regardless of his race or alienage. 42 U.S.C. § 1981 (2006). The Supreme Court has held that section 1981 encompasses claims for retaliation. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457 (2008). The essence of such a claim is an allegation of reprisal against a person who has complained about a violation of his or another person's contract-related right. *Id.* at 445. Although this doctrine extends to the employment context, Davenport's allegations, taken as true, do not state a retaliation claim under section 1981. This is because Davenport's

verbal complaints, written grievances, and 2005 lawsuit did not specifically address the rights and duties imposed by an employment contract, but rather concerned the University's failure to promote him because of his First Amendment activities. Accordingly, the proper avenue for Davenport's retaliation claim is section 1983.

A public employee may recover under section 1983 for an adverse employment decision made by his employer because of the employee's speech so long as the speech (1) was not part of the employee's official duties, (2) was on a matter of public concern, and (3) did not undermine an effective work environment. *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006); *Shands v. City of Kennett*, 993 F.3d 1337, 1342 (8th Cir. 1993). The first prong is satisfied because speaking out against the University's human resources policies and practices was not a part of Davenport's duties in the security department. The second prong is satisfied because Davenport's allegations of unethical conduct by the chancellor of a public university is a matter of public concern. For the purposes of this motion, the third prong is also satisfied because it appears that Davenport continued to adequately perform the duties of his job, despite his poor relationship with Dr. Davis. Accordingly, Davenport may proceed against Dr. Davis on his free-speech retaliation claim under section 1983. All other section 1981 and 1983 claims are dismissed for the reasons stated above.

B.      Retaliation Claims Under Title VII and ACRA

The retaliation provision of Title VII, section 704(a), provides, in pertinent part

It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made

>an unlawful employment practice by this [Title], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this [Title] . . . ." 42 U.S.C. § 2000e-3(a) (2006).

For the purposes of this motion, the text of the parallel provision in the ACRA is identical to the retaliation provision in Title VII. *Compare* Ark. Code Ann. § 16-123-108(a) (LEXIS Repl. 2006). *See Wallace v. Sparks Health System*, 415 F.3d 853, 861 (8th Cir. 2005). To state a *prima facie* case of retaliation, Davenport must show (1) that he engaged in a statutorily protected activity; (2) that the University took an adverse employment action against him; and (3) there was a causal relationship between the two. *Wallace*, 415 F.3d at 858. Because Davenport does not allege that he opposed discriminatory practices prohibited by Title VII or that he participated in any Title VII investigations or proceedings against the University, he cannot proceed under Title VII's retaliation provision. Indeed, Davenport clearly alleges that he was retaliated against because of his free speech activities. As discussed above, those activities are protected by the retaliation provision in section 1983; they are not similarly protected by Title VII or the ACRA. Because Davenport cannot make out the first element of his retaliation claim under Title VII or the ACRA, no further analysis of those claims is required.

C.      Outrage and Breach of Contract

The four elements of the tort of outrage under Arkansas law are as follows: (1) the defendant intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of its conduct; (2) the conduct was "extreme and

outrageous," was "beyond all possible bounds of decency," and is "utterly intolerable in a civilized community"; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. *Crawford County v. Jones*, 209 S.W.2d 381, 391 (Ark. Ct. App. 2005) (citations omitted). Whatever embarrassment Davenport may have suffered under Dr. Davis's regime, it is clear that he has not plead facts rising anywhere near the "high standard required for outrage cases." *Id.* at 393. Therefore, Davenport's outrage claim is dismissed.

Davenport's breach of contract claim is also defective. Although it is not clear whether Davenport's employment with the University is governed by a written contract, he has not set forth specific allegations showing how the University is in breach of any contract between it and him. Accordingly, Davenport has not stated a plausible claim for relief, and this cause of action must also be dismissed.

## IV. CONCLUSION

For the reasons stated above, defendants' motion to dismiss [Doc. No. 4] is granted in part and denied in part as follows: (1) all section 1981 and 1983 claims against the University are hereby dismissed with prejudice; (2) Davenport's claims under Title VII and the ACRA are hereby dismissed with prejudice; (3) Davenport's outrage and breach-of-contract claims are hereby dismissed with prejudice; and (4) Davenport may proceed under section 1983 against Dr. Davis both in his official capacity, for injunctive and declaratory

relief, and in his individual capacity, for monetary damages.

Dated this 14th day of March, 2011.

                                                           UNITED STATES DISTRICT JUDGE